IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHAKITA ROBINSON, LAKISHA WILLIAMS, ELIJAH MAKAU, HABTAMA AKALU<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BROOKDALE SENIOR LIVING COMMUNITIES, INC., PEGGY HACKETT, LINDSAY BEACH<br><br>　　　　Defendants. | Case No. 13-2517-RDR |

# **MEMORANDUM AND ORDER**

This matter is presently before the court upon defendants' motion to dismiss or, in the alternative, to stay proceedings and compel arbitration. The defendant contends that the claims of plaintiffs Shakita Robinson, Lakisha Williams and Elijah Makau are subject to a binding arbitration agreement and should either be dismissed or stayed pending arbitration. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

I.

Plaintiffs Robinson, Williams and Makau filed a complaint in state court on September 11, 2013.[1] The defendants were Brookdale Senior Living Communities, Inc., their former employer, and two managerial employees of Brookdale. Robinson and Williams are identified in the complaint as African-Americans. Makau is identified as a person of African national origin

---

[1] There is a fourth plaintiff: Habtama Akalu d/b/a Harmony Transport. However, he is not mentioned in the defendants' motion.

from the country of Ethiopia. Plaintiffs assert claims under 42 U.S.C. § 1981. They contend they were subjected to a racially hostile work environment during their employment. Robinson and Williams also contend that they were terminated because of their race. Makau contends that he was terminated because of his national origin under § 1981 and for his refusal to perform unlawful acts under state law.

The facts underlying the instant motion are undisputed. Robinson was employed by Brookdale from September 2008 to July 3, 2013. In conjunction with her employment, Robinson signed an Employment Binding Arbitration Agreement on or about September 18, 2008. On September 18, 2008, and on several dates after that time, Robinson signed an Associate Handbook Receipt and Acknowledgment in which she confirmed her agreement to arbitrate any disputes with Brookdale.

Williams was employed by Brookdale from March 2011 until July 3, 2013. She also signed an Employment Binding Arbitration Agreement on or about March 21, 2011. On that date, and on a subsequent date, Williams signed an Associate Handbook Receipt and Acknowledgment Agreement in which she confirmed her agreement to arbitrate any disputes with Brookdale.

Makau was employed by Brookdale from at least February 2007 to May 2013. On February 22, 2007, and again on a subsequent date, Makau signed an Associate Handbook Receipt and Acknowledgment in which he agreed to arbitrate any disputes with Brookdale in accordance with Brookdale's Employment Binding Arbitration Agreement. The Associate Handbook contained Brookdale's Binding Arbitration Procedure.

The Arbitration Agreement signed by Robinson and Williams provides, in part, as

2

follows:

1. As a condition of your employment here, you agree that any controversy or claim arising out of or relating to your employment relationship with us or the termination of that relationship, must be submitted for final and binding resolution by a private and impartial arbitrator, to be jointly selected by you and us.
    a. Claims Covered: This agreement to submit to mediation and (if necessary) arbitration:
        i. Covers any dispute concerning the arbitrability of any such controversy or claim; and
        ii. Includes, but is not limited to, any claim that could be asserted in court or before an administrative agency or claims for which you have an alleged cause of action, including without limitation claims for breach of any contract or covenant (express or implied); tort claims; **claims for discrimination (including but not limited to discrimination based on sex, pregnancy, race, national or ethnic origin, age, religion, greed, marital status, mental or physical disability, or medical condition or other characteristics protected by statute); claims for wrongful discharge**; violations of the Family and Medical Act (FMLA); violations of confidentiality or breaches of trade secrets; and/or claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, and whether based on statute or common law; and
        iii. All those claims whether made against us, any of our parent, subsidiary, or affiliated entities, or our individual officers or directors (in an official or personal capacity).

The Arbitration Agreement provides the following on the payment of the costs of the arbitration process:

j. The parties agree that the costs of the AAA administrative fees and the arbitrator's fees and expenses will be paid for us initially, but as provided by statute or decision of the arbitrator. In other words, all costs could after all is complete be paid by us or you, depending upon the outcome. All other costs and expenses associated with the arbitration, including, without limitation, the party respective attorneys' fees, shall be borne by the party incurring the expense, unless provided otherwise by statute or decision of the arbitrator.

The Arbitration Agreement describes the procedures for the binding arbitration, and concludes: "We both understand that by agreeing to the terms of this [Arbitration] Procedure, both of us are giving up any constitutional or statutory right we may possess to have covered claims decided in a court of law before a judge or a jury."

Similarly, the Binding Arbitration Procedure in the Associate Handbook provides, in part, as follows:

> Under Brookdale's Binding Arbitration Procedure ("Procedure"), if certain disputes arise from your employment with Brookdale or the termination of your employment with Brookdale, you agree to first attempt to resolve the dispute internally through management channels. If internal channels fail, you agree to submit the dispute for resolution by Mandatory Binding Arbitration. In agreeing to the Procedure, you acknowledge that your agreement is given in exchange for rights to which you are not otherwise entitled, namely, your employment as a Brookdale associate. In return you gain access to a prompt and efficient resolution process for employment disputes. As consideration for and in exchange for your agreement, Brookdale likewise agrees to use arbitration as the exclusive forum for resolving employment disputes covered by this Procedure. Neither you nor Brookdale will be entitled to a bench or jury trial on any claim covered by arbitration. The arbitrator will determine any remedies, as well as any costs to be paid and by whom.
>
> By accepting Brookdale's offer of employment or accepting continued employment, both you and Brookdale are agreeing to the terms of the Procedure. By agreeing to the terms in the Procedure, you and Brookdale are both giving up any constitutional or statutory right to have covered claims decided in a court of law before a judge or a jury. The terms of the Procedure also apply to any claims that may be brought by your spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns. **Binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute not specifically excluded herein.**
>
> **Brookdale's Binding Arbitration Procedure**
> As a condition of your employment at Brookdale, you agree to submit any controversy or claim arising out of or relating to your employment relationship with Brookdale, or the termination of that relationship, for final and binding resolution by a private and impartial arbitrator, to be jointly selected by you and Brookdale.

**Claims Covered:**
- Any dispute concerning whether or not the controversy or claim is subject to arbitration; and
- Includes, but is not limited to, any claim that could be asserted in court or claims for which you have an alleged cause of action, including without limitation claims for breach of any contract or covenant (express or implied); tort claims; **claims for discrimination (including but not limited to discrimination based on sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, mental or physical disability, or medical condition or other characteristics protected by statute); claims for wrongful discharge**; violations of the Family and Medical Leave Act (FMLA); violations of confidentiality or breaches of trade secrets; and/or claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, and whether based on statute or common law; and
- All those claims whether made against Brookdale, any of its parent, subsidiary, or affiliated entities, or its individual officers or directors (in an official or personal capacity).

The Acknowledgment that each plaintiff signed provides that, "I agree to Brookdale's Employment Binding Arbitration policy regarding any disputes that arise between Brookdale and me and I agree to arbitrate the dispute by a final binding arbitration."

II.

The defendants contend that the claims of Robinson, Williams and Makau are subject to the binding and enforceable Arbitration Agreement based upon the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. Thus, the defendants seek dismissal of these plaintiffs' claims or, in the alternative, a stay of their claims and an order to compel arbitration.

The FAA provides that contractual agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The purpose of the Act is 'to place an arbitration agreement upon the same footing as other contracts and to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate.'" Hill v. Ricoh Americas Corp., 603 F.3d 766, 771

(10th Cir. 2010)(quoting Glass v. Kidder Peabody & Co., Inc., 114 F.3d 446, 451 (4th Cir. 1997)). The FAA states a "liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). The FAA obliges courts to stay litigation on matters that the parties have agreed to arbitrate. 9 U.S.C. § 3; Hill, 603 F.3d at 771.

III.

Plaintiffs do not dispute that their claims are subject to Brookdale's arbitration provisions. Rather, plaintiffs contend that the arbitration agreement is not enforceable because the cost of the proposed arbitration is so prohibitive that the arbitration agreement is substantively unconscionable. Plaintiffs assert that they could incur "enormous costs" if their employment discrimination claims must be adjudicated through arbitration. They point out that under the American Arbitration Association's (AAA's) Employment Arbitration Rules they could be liable for administrative fees, the costs of compensation of the arbitrator, and costs of the stenographer. Plaintiffs assert that these fees would deter them and other employees with "little financial means from pursuing their federally statutory employment discrimination claims through the arbitration process."

In response, Brookdale argues initially that plaintiffs have misread the arbitration rules of the AAA. Brookdale suggests that AAA's rules provide that plaintiffs would not be required to pay more than $200 in costs, absent a finding that their claims are patently frivolous. Brookdale further contends that plaintiffs have presented no evidence demonstrating the likelihood that an arbitrator would impose arbitration costs on them, the amount of those costs, or that the costs would be prohibitively expensive.

The United States Supreme Court has recognized the possibility that the excessive costs of an arbitration might, under certain circumstances, render an arbitration agreement unconscionable. See Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90 (2000)(noting that "the existence of large arbitration costs could preclude a litigant. . .from effectively vindicating her. . .rights in the arbitral forum"). In Green Tree, the party resisting arbitration raised an unconscionabililty defense based upon an allegation that she would be subjected to excessive arbitration fees. Id. at 80-81. The Court declined to reach a decision on whether the agreement was unconscionable because the party opposed to arbitration failed to produce sufficient evidence of cost. Id. at 90 n. 6(holding evidence insufficient to defeat arbitration where party opposing arbitration supported motion with evidence of AAA figures on arbitration costs, but failed to show that AAA would actually conduct the arbitration or charge her the fees she identified).

Neither party has cited a Tenth Circuit case that was issued after Green Tree that has application here. The defendants rely upon an opinion issued by Judge Lungstrum in which he found it "highly unlikely that any AAA arbitrator, in light of the AAA's own rules on the subject, would assign the costs of arbitration to an employee in the absence of a finding that the claim was brought in bad faith or was patently frivolous." Scofield v. Cypress Leawood, LLC, 2011 WL 839684 at * 4(D.Kan. Mar. 7, 2011).

The court finds this case is much like Green Tree and Scofield. The record does not show that plaintiffs will bear any significant costs of arbitration. Like the plaintiffs in Green Tree and Scofield, the plaintiffs have made no showing concerning the likelihood that an arbitrator would impose costs on them or the probable amount of those costs. As pointed out by

7

the defendants, the AAA rules provide the arbitrator with little discretion to impose costs on plaintiffs. Under the rules applicable to the instant situation, i.e., where the arbitration arises pursuant to an employer-promulgated plan, "a non-refundable fee capped in the amount of $200 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less." The AAA rules further provide that all other costs, including the arbitrator's compensation, are to be borne by the employer "unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation." Finally, the AAA rules state that the expenses of arbitration are "not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for the purposes of harassment or is patently frivolous." Thus, under the AAA rules and absent a finding that their claims are patently frivolous, plaintiffs can be required to pay no more than $200 in costs. The court is not persuaded that this is a prohibitive cost. Plaintiffs have simply failed to make the requisite showing to support their contention that arbitration would be cost prohibitive. Plaintiffs have only contended that there is a possibility of incurring some costs. This is insufficient to invalidate the arbitration agreements. As a result, the court shall grant the defendants' motion to the extent that it seeks arbitration of the claims of plaintiffs Robinson, Williams and Makau. The court will stay the judicial proceedings of their claims in this case pending completion of the arbitration process.

IT IS THEREFORE ORDERED that defendants' motion to dismiss or, in the alternative, to stay proceedings and compel arbitration (Doc. # 4) be hereby granted in part. The parties are directed to proceed to arbitration on the claims of plaintiffs Robinson, Williams and Makau. The court will stay the judicial proceedings of the claims of these plaintiffs in this case pending

completion of the arbitration process.  Counsel for the parties are directed to report to the court in writing on or before July 7, 2014 concerning the status of the arbitration in the event that it has not been terminated earlier.  Failure to so report will lead to dismissal of these plaintiffs' claims for lack of prosecution.

**IT IS SO ORDERED.**

Dated this 5th  day of December, 2013, at Topeka, Kansas.

s/ Richard D. Rogers
Richard D. Rogers
United States District Judge